UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CSC HOLDINGS, INC.,

               Plaintiff,

     -against-

ROBERT CLEMENTI,

               Defendant.
------------------------------------------------------X

**05 CIV. 1932**

05 Civ.       ( )

<u>COMPLAINT</u> **JUDGE CONNER**

**ECF CASE**

The plaintiff, CSC Holdings, Inc. (hereinafter referred to as "Cablevision" or "plaintiff"), by its attorneys, Lefkowitz, Louis & Sullivan, L.L.P., as and for its Complaint herein, alleges the following:

<u>**Summary of Claims**</u>

1.     This action seeks declaratory and injunctive relief and monetary damages based on defendant's statutorily prohibited tampering with plaintiff's cable television system and unauthorized reception, or, in the alternative, assistance in the unauthorized reception, of plaintiff's private scrambled telecommunications signals through use of compatible "pirate" cable television equipment to descramble and receive plaintiff's scrambled cable television programming services. The defendant used, or, in the alternative, assisted in the use, of "pirate" cable television equipment for purposes of intercepting plaintiff's premium, pay per view and/or other scrambled programming services without authorization or payment in violation of Federal civil statutes specifically designed to prohibit the unauthorized reception of cable television programming -- 47 U.S.C. §§ 605(a) and 553(a)(1).

<u>**Jurisdiction and Venue**</u>

2.     This action arises under 47 U.S.C. §§ 605(a) and 553(a)(1).

3.      This Court has original jurisdiction over this action under 28 U.S.C. § 1331.  Venue is properly established in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as the defendant resides in the Southern District of New York.

## Parties

4.      Plaintiff CSC Holdings, Inc. is a division of CSC Holdings, Inc., which is a Delaware corporation authorized to conduct business in New York with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714 and 6 Executive Plaza, Yonkers, New York 10701.

5.      Defendant Robert Clementi is an individual having a principal residence at 5 Arborwood Lane, White Plains, New York 10603.

## Factual Background

## The Cable Operator

6.      Franchises have been duly awarded to Cablevision pursuant to which it has the right to construct, operate and maintain cable television systems in parts of Westchester County, as well as in other counties in New York.  Cablevision offers cable television services to subscribers who request and pay for them.

7.      Cablevision's programming is offered to its subscribers in "packages" of programming services.  "Basic" and "Family" tiers are packages of programming services that a subscriber receives at a monthly rate.  Subscribers may also elect to purchase certain "premium" programming services, such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service.

8.     Additionally, Cablevision offers pay per view programming, a service that enables Cablevision subscribers to purchase individual movies, sporting events, or other entertainment for a per-event fee over and above the subscriber's regular monthly fee for cable television service.

9.     Each subscriber is entitled to receive only that level of programming services that he or she selects and purchases.

10.     The signals for nearly all of Cablevision's cable television services are transmitted to Cablevision's reception facilities from orbiting satellites and other means of over-the-air radio communication. Cablevision thereafter retransmits these same signals to subscribers' homes and businesses through a network of cable wiring and equipment (the "System").

11.     To prevent subscribers from receiving programming services for which they have not paid, Cablevision encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the cable converter that Cablevision provides to subscribers that want to receive scrambled services. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on the subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will be unviewable on the subscriber's television set.

12.     Cablevision's system is "addressable," which means that the converter-decoder Cablevision provides to each subscriber is programmed by a central computer to authorize viewing of only programming services purchased by that subscriber. Each subscriber who purchases services that are scrambled will have his or her decoder programmed by Cablevision's central computer to receive only those services selected and purchased.

3

13.     Encoding ("scrambling") is a primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

14.     It is possible for a dishonest individual to install an unauthorized or "pirate" cable television device (one illegally programmed to enable descrambling of plaintiff's programming services without plaintiff's authorization) onto the plaintiff's cable television system or otherwise tamper with plaintiff's equipment in order to receive Cablevision's scrambled programming without authorization and without making payment therefor.

15.     Pay per view, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay per view programming is available throughout the day on a per-event or movie basis. Premium services, which are also scrambled by Cablevision, range in price from approximately $1.95 to $14.95 per month per service, and packages of premium services range in cost between $40.75 and $80.95. Hence, a "pirate" cable television device could conceivably steal hundreds of dollars worth of Cablevision's premium and pay per view services each month.

16.     Theft of cable service has a negative impact on the various political subdivisions within Westchester County, which derives franchise fees from a cable operator's gross revenues. The lost cash flow to cable operators adversely affects the ability of a cable operator to purchase and maintain a high quality of programming services for its subscribers. Cable piracy also creates an unfair subsidy to "freeloaders," which is paid for by honest, paying subscribers. Furthermore, the maintenance of unauthorized connections and use of pirate devices may result in signal "leakage," which violates FCC regulations and for which Cablevision may suffer the imposition of substantial fines and other sanctions.

4

17.    Cablevision's signal is a private telecommunication not intended for public use.

## **Defendant's Misconduct**

18.    The defendant has been engaged in the ongoing, unauthorized reception and interception of plaintiff's cable television programming services, or, in the alternative, assistance in the interception of plaintiff's cable television programming services.

19.    The defendant purchased "pirate" cable television device(s) or equipment from Explorer Electronics ("Explorer") of Dyer, Indiana.

20.    The defendant has used the "pirate" cable television device(s) obtained from Explorer at defendant's home to receive and intercept Cablevision's cable television programming services without Cablevision's authorization, or, in the alternative, has assisted others in the unauthorized reception and interception of such services by distributing such device(s) to them for such purpose.

21.    The "pirate" cable television device(s) that the defendant purchased from Explorer, and thereafter used to intercept Cablevision's services or distributed to another for such use, is capable of to circumventing Cablevision's premium and pay per view services encryption technology.    The "pirate" device(s) has the capability to unlawfully enable descrambling of scrambled "premium" and pay per view cable television programming transmitted on Cablevision's system.

22.    At all times, the defendant engaged in the unauthorized reception, or assisted in the unauthorized reception, of Cablevision's programming services with intent and specific knowledge that the use of such device(s) would enable defendant and/or others to intercept and receive Cablevision's cable television programming services without Cablevision's authorization and without having made payment to Cablevision for reception of those programming services. The

unauthorized reception of Cablevision's cable television programming services has been ongoing and continuous since the date of the defendant's purchase(s) of the "pirate" device(s). The defendant has engaged in the actions alleged herein for purposes of private financial gain and has acted at all times willfully and deliberately.

**Count I**

**Violations of the Communications Act of 1934, as amended**

23.     Plaintiff incorporates by reference paragraphs 1 through 22, as if replead at length.

24.     The "pirate" cable television equipment used or distributed by defendant is capable of descrambling the plaintiff's scrambled programming services, thereby permitting reception of plaintiff's programming without payment for those services and without authorization from plaintiff to receive such programming services. Said conduct violates 47 U.S.C. §§ 605(a) and 553(a)(1).

25.     By using one or more "pirate" cable television devices, the defendant, or others who defendant assisted, was able to view Cablevision's premium, pay per view, and other scrambled programming without paying monthly or per-event fees for said programming in violation of 47 U.S.C. §§ 605(a) and 553(a)(1).

26.     Cablevision's cable television programming services are "radio communications" within the meaning of 47 U.S.C. § 153(b) and are protected from unauthorized interception and reception under 47 U.S.C. §§ 605(a) and 553(a)(1).

27.     The defendant violated 47 U.S.C. §§ 605(a) and 553(a)(1) willfully and for purposes of private financial gain.

28.     Cablevision has not authorized or consented to the use of "pirate" cable television device(s) by the defendant, nor has Cablevision authorized or consented to defendant's rendering of

6

assistance to third parties engaging in the unauthorized reception and interception of Cablevision's programming signals.

29.    Cablevision is a "person aggrieved" by the defendant's violations, and Cablevision is authorized to institute this action against the defendant under 47 U.S.C. §§ 605(e)(3)(A) and 553(c)(1).

30.    The violations of 47 U.S.C. §§ 605(a) and 553(a)(1) committed by the defendant have injured and will continue to injure Cablevision's ability to maximize its revenues by depriving it of the benefit of subscribing to its programming services and by injuring its goodwill and reputation.  As a further result of such violations, the defendant, or those who defendant assisted, have received and will continue to receive illegal and unjust gains by avoiding payment to Cablevision for the reception of Cablevision's premium, pay per view and/or other scrambled programming.

31.    Moreover, honest paying subscribers may have their services negatively affected as a result of the defendant's violations.

32.    Upon information and belief, unless restrained by this Court, the defendant or the person or persons defendant assisted will continue to violate 47 U.S.C. §§ 605 and 553.  Moreover, the defendant knew or should have known that the use or distribution of such unauthorized equipment to assist interception of cable services was prohibited.   Such violations of the Communications Act have caused and will continue to cause Cablevision irreparable harm. Cablevision cannot practicably determine the amount of lost revenues resulting from the defendant's unlawful conduct.  In addition to diminishing Cablevision's revenues, the defendant's unlawful conduct may injure Cablevision's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impair its ability to enhance its future growth

7

and profitability.  Furthermore, Westchester County may lose franchise fees as a direct result of defendant's misconduct.

33.    Plaintiff has no adequate remedy at law to redress the defendant's violations of 47 U.S.C. §§ 605(a) and 553(a)(1).

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1)    Declare the defendant's unauthorized reception of plaintiff's cable television programming services, or assistance in such unauthorized reception, by use or distribution of "pirate" cable television equipment capable of decoding Cablevision's scrambled cable television signals violated 47 U.S.C. §§ 605(a) and 553(a)(1), and that such violations were committed willfully and for purposes of private financial gain;

(2)    In accordance with 47 U.S.C. §§ 605(e)(3)(B)(i) and 553(c)(2)(A), enjoin the defendant, the defendant's officers, agents, servants, successors, employees, assigns and those controlled directly or indirectly by the defendant, any of their servants, employees, agents and persons acting on their behalf or acting in concert with defendant from receiving plaintiff's cable television programming without plaintiff's authorization or from engaging in the unauthorized reception and interception, whether by air or cable, of the programming, signal or the service of the plaintiff, or in aiding and abetting any such unauthorized interception or reception, and enjoin and restrain the defendant from manufacturing, selling, purchasing, obtaining, using, or possessing any device or equipment which is capable of unscrambling, decoding, providing, descrambling, intercepting, receiving or making available all or part of plaintiff's programming services (whether transmitted by air or cable) without the prior authorization of the plaintiff or other signal provider;

(3)(a)  In accordance with Title 47 U.S.C. § 553 (c)(2)(B) and (c)(3)(A), award plaintiff statutory damages of up to a total of $10,000.00 and, in addition, enhanced damages of up to a total of $50,000.00, assessed against defendant, for all of defendant's violations of 47 U.S.C. § 553(a)(1) involving the unauthorized reception or interception of plaintiff's cable television services or defendant's assistance in the unauthorized reception or interception of plaintiff's cable television services; or, in the alternative,

(b)  In accordance with Title 47 U.S.C. § 605 (e)(3)(B)(ii) and (e)(3)(C), award plaintiff statutory damages of up to $10,000.00 for each of defendant's violations of 47 U.S.C. § 605(a) involving the unauthorized reception or interception of plaintiff's cable television services or, in the alternative, statutory damages of between $10,000.00 and $100,000.00 for each violation of § 605 (a), (e)(3)(C) and (e)(4) involving defendant's assistance in the unauthorized reception or interception of plaintiff's cable television services by means of defendant's sale or distribution of the equipment at issue for the unauthorized reception and interception of plaintiff's cable television services, plus enhanced damages;

(4)  In accordance with 47 U.S.C. § 553(c)(3)(A)(i), order an accounting of all profits and expenses realized by defendant in violation of the foregoing statute;

(5)  In accordance with 47 U.S.C. §§ 553 and 605, direct the defendant to pay plaintiff all of plaintiff's costs, investigative expenses and reasonable attorneys' fees; and

9

(6)     Grant such other and further relief as is just.

Dated:  Jericho, New York
        _____2/4_____ , 2005

                                        Respectfully submitted,

                                        **LEFKOWITZ, LOUIS & SULLIVAN, L.L.P.**
                                        Attorneys for Plaintiff


                                        By: _____
                                            A Member of the Firm ( ʷᴸ ʳ ᴛᵒᴛ )
                                            350 Jericho Turnpike, Suite 300
                                            Jericho, New York 11753
                                            (516) 942-4700



MMD/B18

10